**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MARVIN GUREWITZ,

      Plaintiff,

v.

M.D.C. HOLDINGS, INC.,
LARRY A. MIZEL,
DAVID D. MANDARICH,
RAYMOND T. BAKER,
MICHAEL A. BERMAN,
DAVID E. BLACKFORD,
HERBERT T. BUCHWALD,
RAFAY FAROOQUI,
COURTNEY L. MIZEL,
PARIS G. REECE III,
DAVID SIEGEL,
JANICE SINDEN,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**
**FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

---

Plaintiff, Marvin Gurewitz ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.      Plaintiff brings this stockholder action against M.D.C. Holdings, Inc. ("MDC" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to SH Residential Holdings, LLC, ("Parent") through merger vehicle Clear Line, Inc. ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction"). Parent and Merger Sub are both wholly owned subsidiaries of Sekisui House, Ltd. ("Guarantor," and together with Parent and Merger Sub, "Sekisui").

2.      The terms of the Proposed Transaction were memorialized in a January 18, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, MDC shareholders will receive $63.00 per share in cash in a deal with an equity value of $4.9 billion.

3.      Thereafter, on February 23, 2024, the Company filed its Preliminary Proxy Statement (the "Preliminary Proxy Statement") on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement with the SEC in an effort to solicit public stockholders such as Plaintiff to vote his MDC shares in favor of the Proposed Transaction.

6.      The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for MDC, provided by the Company to the Company's financial advisors Vestra Advisors LLC ("Vestra"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Vestra, and provided to the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.     Plaintiff is a citizen of California and, at all times relevant hereto, has been an MDC stockholder.

9.     Defendant MDC, through its subsidiaries, engages in the homebuilding and financial service businesses. MDC is incorporated in Delaware and has its principal place of business at 4350 South Monaco Street, Suite 500, Denver, Colorado 80237.  Shares of MDC common stock trade on the New York Stock Exchange ("NYSE") under the symbol "MDC."

10.     Defendant Larry L. Mizel ("L. Mizel") has been a director of the Company at all relevant times.  In addition, he serves as the Company's Executive Chairman of the Board.

11.     Defendant David D. Mandarich ("Mandarich") has been a director of the Company at all relevant times and is also the Company's President and Chief Executive Officer ("CEO").

12.     Defendant Raymond T. Baker ("Baker") has been a director of the Company at all relevant times.

13.     Defendant Michael A. Berman ("Berman") has been a director of the Company at all relevant times.

14.     Defendant David E. Blackford ("Blackford") has been a director of the Company at all relevant times.

15.     Defendant Herbert T. Buchwald ("Buchwald") has been a director of the Company at all relevant times.

16.     Defendant Rafay Farooqui ("Farooqui") has been a director of the Company at all relevant times.

17.     Defendant Courtney L. Mizel ("C. Mizel") has been a director of the Company at all relevant times.

18.     Defendant Paris G. Reece III ("Reece") has been a director of the Company at all relevant times.

19.     Defendant David Siegel ("Siegel") has been a director of the Company at all relevant times.

20.     Defendant Janet Sinden ("Sinden") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 10 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-party Parent and Non-party Merger Sub are wholly owned subsidiaries of Non-party Guarantor.

<u>**JURISDICTION AND VENUE**</u>

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26.     Defendant MDC, through its subsidiaries, engages in the homebuilding and financial service businesses. Its homebuilding operations include purchasing finished lots or developing lots for the construction and sale primarily of single-family detached homes to first-time and first-time move-up homebuyers under the Richmond American Homes name.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the November 9, 2023, press release announcing its 2023 Q3 financial results, the Company highlighted such milestones as: Unit gross orders increased 42% to 2,227 from 1,569; and Cancellations as a percentage of gross orders of 23.9% vs. 80.9%.

28.     Speaking on these positive results, CEO Defendant Mandarich commented on the Company's positive financial results as follows, "Net new orders improved considerably from the prior year period, thanks to a significant reduction in cancellations and our use of financing incentives that lessened the impact of higher mortgage rates for our buyers."

29.     CEO Defendant Mandarich continued that sentiment by stating, "Our sales pace for the quarter was 2.4 homes per community per month and was fairly consistent across our homebuilding footprint. We continue to see motivated buyers in our markets, provided we can meet their affordability needs."

30.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by MDC. Based upon these positive financial results and outlook, the Company is likely to have future success.

31.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused MDC to enter into the Proposed Transaction without providing requisite information to the Company's stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Sekisui.

33.     The Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Sekisui and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

34.     In addition, the Preliminary Proxy Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

36.     On January 18, 2024, MDC and Sekisui issued a joint press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

> OSAKA, Japan and DENVER, Jan. 18, 2024 /PRNewswire/ -- Sekisui House, Ltd. ("Sekisui House") (TSE:1928), a top-tier house manufacturer in Japan having delivered over 2.62 million homes worldwide since its establishment, and M.D.C. Holdings, Inc. ("MDC") (NYSE: MDC), one of the leading homebuilders in the U.S. delivering high-quality homes over the past 50 years, announced today a definitive agreement pursuant to which a wholly-owned subsidiary of Sekisui House will acquire MDC in an all-cash transaction with an equity value of US$4.9 billion (approximately JPY 688 billion at a JPY:USD conversion rate of 140:1). Subject to and in accordance with the terms and conditions of the agreement, MDC shareholders will receive US$63.00 per share in cash, which represents an approximately 19% premium to MDC's closing stock price on January 17, 2024, the last trading day prior to announcing the transaction, and an approximately 41% premium to MDC's 90-day volume-weighted average trading price.
>
> By leveraging Sekisui House technologies and cutting-edge building practices cultivated in Japan, MDC expects to deliver higher quality houses that enhance its position in the key states in which it operates. Through the transaction, MDC will accelerate Sekisui House's Global Vision to "make home the happiest place in the world" by joining the Sekisui House family of brands that includes Woodside Homes, Holt Homes, Chesmar Homes and Hubble Homes. Upon closing, Sekisui House will become the fifth largest housebuilder in the U.S. (based on the number of houses closed in 2022), helping Sekisui House to achieve its target of supplying 10,000 homes outside of Japan by FY2025, sooner than anticipated.
>
> Yoshihiro Nakai, Representative Director of the Board President, Executive Officer and CEO of Sekisui House, stated, "This exciting acquisition of MDC represents a significant advancement of the Sekisui House strategy to expand our U.S. presence and bring the value of our technology, innovation and philosophies to U.S. homebuilding and ultimately to our customers. It will also allow us to achieve our goal of supplying 10,000 homes outside of Japan by FY2025, ahead of our initial expectations. This transaction directly aligns with our stated strategy for growth in North America and will create a more resilient portfolio for Sekisui House."

Toru Tsuji, CEO of SH Residential Holdings, LLC and Executive Officer of Sekisui House, stated, "Demand for quality homes in the U.S. market remains high and MDC will expand our ability to serve customers in key U.S. states that are poised for continued growth. Through our Global Vision to 'make home the happiest place in the world,' we are leveraging Sekisui House technologies to increase the opportunity for customers in the U.S. to purchase quality, environmentally sound homes that they can cherish forever. We look forward to welcoming MDC's management and employees to the Sekisui House team who will be integral to our continued growth and success."

Larry Mizel, Founder & Executive Chairman of MDC, stated, "Over the past half-century, our unwavering commitment to excellence has been the cornerstone of our success, benefiting customers, employees, business partners and shareholders. In our remarkable journey, marked by the construction of over 240,000 homes, we've emerged as a top 10 homebuilder in the United States. Our ability to navigate through varying housing market cycles while maintaining business resilience speaks to our strategic prowess, and has led not only to the creation of significant shareholder value, but also to an industry-leading dividend yield for our shareholders. Our strategic decision to merge with Sekisui House is a testament to our focus on maximizing shareholder value and delivering significant cash proceeds for our shareholders. Sekisui House's technology and processes are well-regarded, and we look forward to partnering with a company that shares our belief in delivering customers with high-quality homes and a streamlined, comprehensive homebuying experience."

David Mandarich, President, CEO and Director of MDC, stated, "MDC, through our Richmond American Homes brand, has been trusted by customers for decades. As part of Sekisui House's U.S. family of brands, we expect new opportunities for growth across our footprint for our team members and within our customer offering. We thank all of our team members across the organization for their hard work that made this transaction possible and will position the combined company as a leading homebuilder. Sekisui House and its brands are well respected with a reputation for quality, and we look forward to becoming an important part of the portfolio."

**Significant Benefits of the Acquisition**

- **Creates the fifth largest homebuilder in the U.S. to deliver on growing demand for single-family homes.** Demand in the U.S. for new homes is expected to continue to grow as its population grows. Sekisui House will bring to MDC a fully integrated value chain of insights, design, manufacturing, marketing, sales and after-sales services to support efficiency and enhance the homebuyer experience. MDC will help Sekisui House meet growing U.S. housing needs with enhanced capacity to deliver single-family houses and support customers' increasingly diversified demands – from breaking ground to choosing the specification and finishes in their new homes.

- **Strengthens relationships with trade partners by expanding Sekisui House technologies cultivated in Japan throughout the U.S.** Sekisui House has advanced technology cultivated through its operations in Japan, while MDC has a strong track record of providing high-quality homes for more than 50 years in the U.S. Sekisui House will transfer its technology and innovation, including zero-emission homebuilding processes, to expand its offering of high quality, ESG-conscious products and lifestyle packages to MDC customers at a time when demand for such products is growing. Over time, the transaction is expected to provide new opportunities for economic growth and job creation in the U.S.

- **Advances Sekisui House's global vision to "make home the happiest place in the world."** Sekisui House aims to create homes and communities that last for generations and is currently working to solve social issues through the integration of technologies, lifestyle design and services with a focus on health, connectedness and learning as it advances R&D into new technologies with a focus on the residential domain. Through the acquisition of MDC, Sekisui House will aim to achieve its global vision through providing superior quality homes that ensure comfort, security and peace of mind for customers across the U.S.

- **Significant contribution to shareholder value creation for Sekisui House shareholders.** Through the transaction, Sekisui House is expected to be poised for long-term growth potential and profitability. Sekisui House expects to realize savings through the transaction primarily through combined procurement and supply chain to deliver enhanced value for Sekisui House's shareholders.

- **Provides new opportunities for MDC's employees and other stakeholders as part of Sekisui House global portfolio.** As part of Sekisui House, MDC will have access to the advantage of a financially strong parent company to support its growth. MDC's employees and other stakeholders are expected to benefit from this relationship through access to Sekisui House's extensive offering, capabilities and resources, as well as by becoming an essential part of the service of customers and engagement with communities that drive Sekisui House's continued success.

**Transaction Overview**

Subject to and in accordance with the terms and conditions of the merger agreement, which was unanimously approved by the Boards of Directors of both Sekisui House and MDC, a wholly-owned subsidiary of Sekisui House will acquire all outstanding shares of MDC for a price per share of US$ 63.00 in cash. Closing of the acquisition is expected in the first half of 2024, subject to certain conditions, including approval of the merger by MDC's stockholders, regulatory approvals and other customary conditions. The transaction is not subject to a financing condition.

Larry Mizel and David Mandarich and certain of their respective affiliates and estate planning vehicles, who beneficially own approximately 21.2% of MDC's shares, have entered into an agreement, among other things, to vote in favor of the transaction subject to and in accordance with the terms and conditions set forth therein.

***Potential Conflicts of Interest***

37.     The breakdown of the benefits of the deal indicates that MDC insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of MDC.

38.     For example, Company insiders currently own company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

*Company Options*

| Name | Number of Shares Subject to Company Options (#) | Value of Shares Subject to Company Options ($) | Weighted Average ExercisePrices ($) |
|---|---|---|---|
| Larry A. Mizel | 1,665,280 | 57,700,928 | 28.35 |
| David D. Mandarich | 1,465,280 | 50,856,928 | 28.29 |
| Raymond T. Baker | 7,500 | 72,600 | 53.32 |
| Michael A. Berman | 15,000 | 271,500 | 44.90 |
| Courtney L. Mizel | 16,534 | 438,482 | 36.48 |

*Company RSAs*

| Name | Number of Shares Subject to Company RSA (#) | Value of Shares Subject to Company RSA ($) |
|---|---|---|
| Larry A. Mizel | 63,868 | 4,023,684 |
| David D. Mandarich | 63,868 | 4,023,684 |
| Robert N. Martin | 47,338 | 2,982,294 |
| Michael L. Kaplan | 8,531 | 537,453 |
| Raymond T. Baker | 7,552 | 475,776 |
| Michael A. Berman | 7,552 | 475,776 |
| David E. Blackford | 7,552 | 475,776 |
| Herbert T. Buchwald | 7,552 | 475,776 |
| Rafay Farooqui | 7,552 | 475,776 |
| Courtney L. Mizel | 7,552 | 475,776 |
| Paris G. Reece III | 7,552 | 475,776 |
| David Siegel | 7,552 | 475,776 |

| Name | Number of Shares Subject to Company RSA (#) | Value of Shares Subject to Company RSA ($) |
|---|---|---|
| Janice Sinden | 7,552 | 475,776 |

*Company PSU Awards*

| Name | Number of Shares Subject to Company PSU Awards (at maximum) (#) | Value of Shares Subject to Company PSU Awards ($) |
|---|---|---|
| Larry A. Mizel | 400,000 | 25,200,000 |
| David D. Mandarich | 360,000 | 22,680,000 |
| Robert N. Martin | 35,000 | 2,205,000 |

39.     In addition, employment agreements with certain MDC executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

**Golden Parachute Compensation**

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Larry A. Mizel | 54,890,710 | 29,223,684 | — | 84,114,394 |
| David D. Mandarich | 40,890,710 | 26,703,684 | — | 67,594,394 |
| Robert N. Martin | 3,236,538 | 5,187,294 | 33,402 | 8,457,234 |
| Michael L. Kaplan | 1,461,538 | 537,453 | 23,806 | 2,022,797 |
| Rebecca B. Givens[4] | — | — | — | — |

| Named Executive Officer | Transaction Bonus ($) | Severance ($) | Total ($) |
|---|---|---|---|
| Larry A. Mizel | 33,000,000 | 21,890,710 | 54,890,710 |
| David D. Mandarich | 21,000,000 | 19,890,710 | 40,890,710 |
| Robert N. Martin | 2,550,000 | 686,538 | 3,236,538 |
| Michael L. Kaplan | 1,425,000 | 36,538 | 1,461,538 |

40.     The Preliminary Proxy Statement also fails to adequately disclose the totality of the communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

41.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of MDC, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy Statement**

43.     On February 23, 2024, the MDC Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     The Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

  a.  Whether the confidentiality agreements entered into by the Company with Sekisui differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

  b.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Sekisui, would fall away; and

c. Any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

45. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning MDC's Financial Projections*

46. The Preliminary Proxy Statement fails to provide material information concerning financial projections for MDC provided by MDC management to the Board and Vestra and relied upon by Vestra in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

47. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Vestra reviewed, "certain publicly available business and financial information relating to the Company as well as certain financial forecasts."

48. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that MDC management provided to the Board and Vestra. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

49. With regard to the *Projections* provided by MDC Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.  Consolidated Pretax Income, including all underlying inputs, metrics, and assumptions used to calculate same;

b.  Net Income, including all underlying inputs, metrics, and assumptions used to calculate same;

c.  Diluted EPS, including all underlying inputs, metrics, and assumptions used to calculate same; and

d.  Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same.

50.  The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.  This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.  Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Vestra financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Vestra*

53.     In the Preliminary Proxy Statement, Vestra describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

54.     With respect to the *Select Publicly Traded Company Analysis*, the Preliminary Proxy Statement fails to disclose:

a.   The enterprise value for each of the Selected Public Companies;

b.   The underlying inputs, metrics, and assumptions used to determine the Price/2023E Book Value Multiple for each of the Selected Publicly Traded Companies;

c.   The underlying inputs, metrics, and assumptions used to determine the Price/2024E EPS Multiple for each of the Selected Publicly Traded Companies;

d.   The underlying inputs, metrics, and assumptions used to determine the Price/2023E Book Value Multiples range of 1.2x to 1.4x utilized;

e.   The underlying inputs, metrics, and assumptions used to determine the Price/2024E EPS Multiples range of 7.0x to 9.0x; and

f.   The number of fully diluted shares of Company Common Stock utilized.

55.     With respect to the *Precedent Transactions Analysis,* the Preliminary Proxy Statement fails to disclose the following:

a.   The specific date on which each selected transaction was consummated;

    b.   The aggregate value of each selected transaction;

    c.   The underlying inputs, metrics, and assumptions used to determine the Price/Book Value Multiple for each of the selected transactions;

    d.   The underlying inputs, metrics, and assumptions used to determine the Price/Book Value Multiples of 1.1x to 1.3x utilized; and

    e.   The number of fully diluted shares of Company Common Stock utilized.

56.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The Company's terminal value;

    b.   The underlying inputs, metrics, and assumptions used to determine the terminal inventory multiples of 1.1x to 1.3x utilized;

    c.   The underlying inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.7% to 13.2% utilized;

    d.   The underlying inputs, metrics, and assumptions used to determine MDC's weighted average cost of capital utilized; and

    e.   The number of fully-diluted shares of Company Common Stock.

57.    With respect to the Selected *Analyst Broker Price Targets Analysis,* the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific price targets analyzed; and

    b.   The specific Wall Street firms that generated the analyzed price targets.

58.    With respect to the *Premiums Paid Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific precedent acquisition transactions analyzed;

b.  The premia paid in each of the specific precedent acquisition transactions analyzed;

c.  The underlying inputs, metrics, and assumptions used to determine the illustrative premia reference range of 20.7% to 40.7% applied to the closing price of Company Common Stock on January 16, 2024; and

d.  The underlying inputs, metrics, and assumptions used to determine the illustrative premia reference range of 3.1% to 16.9% applied to the 52-week high of the Company Common Stock as of December 27, 2023.

59.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

60.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public MDC stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

61.    Plaintiff repeats all previous allegations as if set forth in full herein.

62.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

63.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

64.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

65.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

66.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

67.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

68.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

69.     Plaintiff repeats all previous allegations as if set forth in full herein.

70.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

71.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

72.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of MDC's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

73.     The Individual Defendants acted as controlling persons of MDC within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause MDC to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled MDC and all of its employees.  As alleged above, MDC is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 1, 2024                              **BRODSKY & SMITH, LLC**

                                    By:      _/s/ Marc Ackerman_
                                             Marc L. Ackerman
                                             Two Bala Plaza, Suite 805
                                             333 East City Avenue
                                             Bala Cynwyd, PA 19004
                                             Phone: (610) 667-6200
                                             Fax:     (610) 667-9029
                                             Email: mackerman@brodskysmith.com

                                             *Counsel for Plaintiff*